# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE, as guardian, on behalf of JOHN DOE NO. 1, a minor, and JOHN DOE NO. 2,<br><br>PLAINTIFFS,<br><br>V.<br><br>PETER J. NYGARD, NYGARD INC., NYGARD INTERNATIONAL PARTNERSHIP, AND NYGARD HOLDINGS LIMITED<br><br>DEFENDANTS. | CASE NO.: 1:20-CV-06501<br><br>**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER AND LEAVE TO PROCEED ANONYMOUSLY WITH MEMORANDUM IN SUPPORT** |

Plaintiffs John Doe No. 1, a minor (brought by Jane Doe as guardian) and John Doe No. 2 (collectively, "Plaintiffs"), through their undersigned counsel, respectfully request that this Court allow Plaintiffs to bring this action anonymously and grant a protective order, pursuant to Federal Rules of Civil Procedure 26(c), to ensure that Defendants keep Plaintiffs' identities confidential throughout the pendency of the lawsuit and thereafter. The arguments in support of this motion are set out in the Memorandum in Support incorporated herein by this reference.

**MEMORANDUM IN SUPPORT**

I.  **SUMMARY OF THE FACTS**

Plaintiffs are survivors of sex trafficking and are bringing an action for damages against Defendants, under 18 U.S.C §§ 1591, 1594, 1595, as enacted by the federal Trafficking Victims Protection Reauthorization Act ("TVPRA"). Plaintiffs seek a protective order and leave to proceed anonymously because the disclosure of their identities on the public docket will cause the victims harm that outweighs the presumption of open judicial proceedings under these special circumstances.

At the time of the acts alleged in Plaintiffs' Complaint, Defendant, Peter Nygard ("Nygard"), was the founder, chairman, figurehead, former chief executive, and icon of Nygard Inc., Nygard International Partnership ("Nygard International"), and Nygard Holdings Limited ("Nygard Holdings") (collectively, the "Nygard Companies"). Nygard, using the Nygard Companies' resources, conspired with the Nygard Companies and engaged in a sex trafficking venture, and causing Plaintiffs, through force, fraud or coercion, or knowing that the victim had not yet attained the age of eighteen (18) years, to engage in commercial sex acts. Nygard made a concentrated and deliberate effort to protect and conceal his criminal activities.

Plaintiffs did not come forward for many years due to legitimate fear of retaliation and public exposure of their identities. Furthermore, each Plaintiff's status as a victim of sex trafficking is highly sensitive, personal, and contains private information that implicitly discloses each Plaintiff as a victim of sexual abuse and/or rape. Requiring Plaintiffs to disclose their identities in public court records, in order to assert their claims against Nygard and his companies will only serve to further re-victimize Plaintiffs and compound the harm for which they seek redress through this litigation.

Plaintiffs each agree to proceed as "John Doe," and do not object to providing their true, full name to Defendants, by way of defense counsel, pursuant to a protective order barring further dissemination of that information and requiring all documents containing their true names to be filed under seal. Accordingly, granting Plaintiffs' motion will in no way prejudice Defendants. Ultimately, Plaintiffs' substantial privacy interests regarding this deeply personal and degrading violation outweigh the public's interest in knowing their identities, as there is a greater public interest in protecting the interests of sexual assault victims and survivors of commercial sex trafficking, and to ensure that other similarly situated victims will not be deterred from reporting Defendants' crimes and seeking redress.

## II. ARGUMENT

There is a public interest in allowing society to scrutinize government functions, including open access to attend and observe both criminal and civil proceedings. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 599-600 (1980). "The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical." *Doe v. Stegall,* 653 F.2d 180 (5th Cir. 1981). Party anonymity does not inhibit the public interest to an open trial in the way that closure of a courtroom does; rather, the public can still attend and observe a trial while the plaintiffs proceed under pseudonyms, thus preserving the constitutional interest in ensuring that "[w]hat transpires in the courtroom is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947).

Although Fed. R. Civ. P. 10(a) requires the title of the complaint to name all the parties, courts have "approved of litigation under a pseudonym in certain circumstances," in order to protect the plaintiffs appearing in federal court. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008). When deciding whether a plaintiff may proceed under a pseudonym, the

Second Circuit holds that a balancing test must be used that weighs the plaintiffs' need for anonymity against the countervailing public interests of disclosure and any prejudice to the defendant. *Id.* at 189.

The Second Circuit has set forth a list of ten (10) non-exhaustive factors that courts may consider in determining whether to permit a plaintiff to proceed pseudonymously:

> (1) Whether the litigation involves matters that are highly sensitive and of a personal nature;
>
> (2) Whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties;
>
> (3) Whether identification presents other harms and the likely severity of those harms;
>
> (4) Whether the plaintiffs are particularly vulnerable to the possible harms of disclosure, particularly in light of each individual plaintiff's age;
>
> (5) Whether the suit is challenging the actions of the government or that of private parties;
>
> (6) Whether the defendant is prejudiced by allowing the plaintiffs to press their claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated;
>
> (7) Whether the plaintiffs' identities have thus far been kept confidential;
>
> (8) Whether the public's interest in the litigation is furthered by requiring the plaintiffs to disclose their identities;
>
> (9) Whether, due to the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and
>
> (10) Whether there are any alternative mechanisms for protecting the confidentiality of the plaintiffs.

*Sealed Plaintiff,* 537 F.3d. at 190.  Courts are "not required to list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion." *Id*. at 191, n. 4.

In this case, all of the relevant factors strongly weigh in favor of Plaintiffs' motion to file this case using pseudonyms. Accordingly, the motion should be granted.

### A. Factor 1: Disclosure of Plaintiffs' identities would reveal information that is of a highly sensitive and personal nature.

Plaintiffs have a substantial privacy right in guarding the sensitive and highly personal information they must disclose in this sex trafficking litigation. Evaluating "the issue of pseudonymity requires weighing the scales between the public's interest and the rights to privacy advanced by the movant … [and] privacy interests are recognized in particular circumstances to be in the public interest." *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998).

In evaluating what information constitutes that of a highly sensitive and protected nature, it is well established that victims of rape, human trafficking, and sexual battery have a strong interest in protecting their identities, so that other victims will not be deterred from reporting such crimes. *See Doe v. Blue Cross & Blue Shield United of Wisconsin,* 112 F.3d 869, 872 (7th Cir. 1997) (a rape survivor's right to privacy overcomes the right for the public interest to know her identity); *Doe v. Cabrera*, 307 F.R.D. 1, 6 (D.D.C. 2014) (holding the sensitive and highly personal nature of the case, the risk of psychological harm to the plaintiff if the plaintiff's name were made public, and the minimal, if any, unfairness that the plaintiff's anonymity would cause the defendant weighed in favor of allowing plaintiff to proceed anonymously); *Fla. Abolitionist, Inc. v. Backpage.com LLC,* No. 17 Civ. 218, Doc. 46 at 2-4 (M.D. Fla. 2017) (multiple sex trafficking survivors' right to privacy, especially when some were minors, overcomes the right for the public interest to know their identities); *Jane Doe v. Uber Technologies, Inc*., 17-CV-00950-WHO, Doc. No. 27 (N.D. Cal. Oct. 15, 2015) (the right for privacy for sexual and physical assault survivors, as well as human trafficking survivors, overcomes the right for the public interest to know their identities). One of the main deterrents to reporting sex crimes and crimes of human trafficking is

the survivor's fear that his or her identity will become known; and, as such, the survivor's individual privacy right overcomes the public interest of knowing the survivor's identity. Society is better served by incentivizing victims of these horrific crimes to come forward, instead of enabling the perpetrator to remain unaccountable and continue to commit sex crimes. *See Blue Cross & Blue Shield United of Wisconsin,* 112 F.3d. at 872.

Plaintiffs are alleged to have been raped and otherwise sexually abused at the direction of Nygard, while they were minors. And John Doe No. 1 is currently a minor. As rape survivors and human trafficking survivors, Plaintiffs have an absolute right to protect their identities, which overcomes any public interest to the contrary. Disclosure of Plaintiffs' identities will reveal information that is of a highly sensitive and personal nature, which weighs in favor of allowing Plaintiffs to proceed under pseudonyms.

### B. Factor 2: Disclosing Plaintiffs' identities would subject them to a risk of retaliation, and physical or mental harm by Defendants.

If identification of Plaintiffs' identities poses a reasonable risk of retaliatory physical or mental harm to Plaintiffs, then this factor should be weighed in favor of proceeding pseudonymously. *Sealed Plaintiff*, 537 F.3d at 190. Courts must determine if the moving party's fear is substantial and reasonable. *Plaintiffs #1-21*, 138 F.Supp. at 272; *see also Does I thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1070 (9th Cir. 2000). When considering the reasonableness of the fear of retaliation, the Court in *Plaintiffs #1-21* properly relied on the allegations in the complaint regarding the defendants' conduct as the foundation for such a determination. *Id.*

Plaintiffs have suffered substantial psychological and physical abuse at the hands of and/or direction of Nygard and continue to live in constant fear of him. As set forth in a related case, *Jane Doe Nos. 1-57 v. Nygard*, No. 1:20-cv-01288, Dkt. No. 51 (S.D.N.Y. 2020), Nygard has an

6

extensive history of publicly attacking his accusers in the media and has done so in relation to that case.  Furthermore, it is well known amongst Nygard's victims that he would often manipulate and deceive the press by paying individuals to disseminate misleading stories in the media.  *See, e.g.*, Dkt. No. 1. at ¶ 118.  This reality creates further terror in the victims that they will become the target of a vicious, targeted media campaign to smear their names and humiliate them, in an effort to silence their voices.  Nygard's victims know that if they turn against Nygard or report him, there will be dire consequences and retaliation by Nygard or his associates.  This is a tremendous deterrent to coming forward and reporting Nygard, out of fear of humiliation in the press, severe retaliation, and danger.

Disclosing Plaintiffs' identities would subject them to a risk of retaliation and physical or mental harm by Defendants, which weighs in favor of allowing Plaintiffs to proceed under pseudonyms.

### C. Factor 3: Identification of Plaintiffs would likely cause additional severe harm to Plaintiffs.

If Plaintiffs are publicly identified, it will further exacerbate the ongoing psychological harm and trauma Plaintiffs already suffer.  Human trafficking and sexual abuse strips its victims of their dignity and value as a person; it erases the victim's choice and makes the victim doubt their own self-worth.[1]  There is a psychological vulnerability and harm to even the strongest of sex trafficking survivors that is easily exacerbated.  Survivors of sex trafficking and sexual abuse who have been able to thrive after their ordeal and speak openly about the offenses they were subject to, explain that it takes a great deal of incredibly difficult work to reach that point.[2]  Even at the

---

[1] https://www.unodc.org/unodc/en/frontpage/breaking-the-silence-on-human-trafficking.html.

[2] Ruth Rondon, *Understanding the 4 Stages of Recovering from Sex Trafficking*, Human Trafficking eLearning, (2017) 1- 7, 5 (This guide is written by a well-published survivor of sex trafficking and is attached hereto as "Exhibit 1.").

most advanced stages of healing, many survivors are not willing to go public with their stories. Survivors struggle with "re-living the traumas over again through flashbacks, overwhelming intrusive and negative thoughts, feeling consumed by emotions of shame and guilt, thinking that they are living in hiding and unable to let themselves be truly seen, and experiencing fleeting feelings of dignity and respect."[3]  Plaintiffs do not speak openly about their past victimization, and instead, try to regain the normal life they were deprived of due to Defendants' actions. Thrusting Plaintiffs, that are not ready to be public with their stories, into the public spotlight will cause severe psychological harm and can be catastrophic to a survivor's recovery.

Additionally, victims of sex trafficking and sexual abuse are also uniquely vulnerable in this current age of technology, where every thought, whether accurate or inaccurate, gets published online in social media.  *See Cabrera*, 307 F.R.D. at *7 ("Having the plaintiff's name in the public domain, especially in the Internet age, could subject the plaintiff to future unnecessary interrogation, criticism, or psychological trauma, as a result of bringing this case.").  Traffickers and sexual predators, like Nygard, are experts in psychological manipulation; they use degrading and dehumanizing tactics to keep their victims enslaved and in fear.  To certain segments of society, the victims are sometimes viewed as "at fault" for what happened to them.  Therefore, to subject Plaintiffs to such unsolicited feedback online through public disclosure of their identities— when what they each seek from this litigation is to come a step closer to being made whole again— will perpetuate the same harm that Plaintiffs have already suffered.  Identification of Plaintiffs will likely cause additional severe mental and psychological harm, which weighs in favor of allowing Plaintiffs to proceed under pseudonyms.

---

[3] *Id* at 3.

> **D. Factor 4: As survivors of sex trafficking, Plaintiffs are particularly vulnerable to the possible harm of disclosure, especially given that they were children during the time they were sexually abused by Nygard.**

Plaintiffs are particularly vulnerable to the harms inherent in disclosure of their identities, especially since they were children at the time they were raped, sexually assaulted, and/or sex trafficked by Nygard.

In *Doe v. Stegall*, the Fifth Circuit considered several factors when deciding if the plaintiffs should be permitted to proceed anonymously in an establishment clause matter involving religion in schools. The lawsuit was brought on behalf of two children in middle school, and the plaintiffs sought to proceed under pseudonyms to protect their names from the general public. The plaintiffs agreed to allow the defendants to know their names, so long as a protective order prevented the defendants from disclosing the names to anyone beyond their legal representatives. The court determined that a special emphasis must be given to the "special status and vulnerability" of child plaintiffs, and ultimately determined that the plaintiffs should have been permitted to proceed under pseudonyms. *Stegall*, 653 F.2d at 186.

Plaintiffs were both fourteen (14) at the time they were trafficked and sexually abused at the direction of Nygard. As children when the acts occurred, Plaintiffs are particularly vulnerable to psychological trauma. Adults are supposed to protect children. Instead, Nygard used their young age, hopes and dreams, and inexperience with sexuality and life to manipulate and coerce these children into becoming victims of rape and human trafficking. Plaintiffs share a tremendous amount of shame and guilt over acts that were inflicted upon them when they were young and vulnerable, which weighs in favor of allowing Plaintiffs to proceed under pseudonyms.

9

### E. Factor 5: Plaintiffs are challenging the actions of wealthy and powerful private parties.

Some courts recognize that when a minor plaintiff challenges the statutory or regulatory validity of government activity, the might and size of the government can be daunting. Therefore, courts lean in favor of permitting minor plaintiffs to proceed pseudonymously. *Doe v. Frank*, 951 F.2d 320, 323-24 (11th Cir. 1992), *citing Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979).

Similarly, Nygard has used his substantial financial resources, influence, power, and name recognition to control and manipulate his victims, and to ensure that his crimes were not reported. *See Jane Does No. 1-57 v. Nygard*, Doc. No. 1 at ¶¶ 116-132, 500-505. In an effort to reinforce fear, control, and dominance over his victims, Nygard regularly flaunted his political power to control the Bahamian police and the Bahamian government, and would often parade government officials around the Nygard Cay property in front of his victims. *Id.* Over decades, Nygard has spent significant money to bribe Bahamian officials and law enforcement, in order to gain political influence and power on the island through political contributions. *Id.* In the minds of the victims, and through Nygard's own design and scheme, the name "Peter Nygard" has become synonymous with wealth, power, and political and police corruption. Plaintiffs here are uniquely aware of Nygard's wealth, power, and political and police corruption because they are his sons and they know the lengths that he will use to discredit his victims.

In this case, while Plaintiffs are challenging private parties, Nygard's wealth, government ties, power, and influence make this lawsuit akin to challenging the government. Therefore, this factor weighs in favor of allowing Plaintiffs to proceed using pseudonyms.

### F. Factor 6: Defendants will not be prejudiced by Plaintiffs bringing their claims using pseudonyms because Defendants will know the names of Plaintiffs, subject to a protective order.

As a general rule, courts have determined that while a plaintiff's identity may be protected from the general public, it will prejudice the defendant to not know whom to investigate, and will frustrate the defendant's ability to participate meaningfully in discovery without knowing the identity of the accuser(s). *Plaintiffs #1-21 v. County of Suffolk*, 138 F.Supp. 3d 264, 276 (E.D.N.Y. 2015); *Doe I v. Four Bros. Pizza,* No. 13 CV 1505(VB), 2013 WL 6083414, at *10 (S.D.N.Y. Nov. 19, 2013).  It is well established that when balancing the different interests involved in cases such as these, "courts have permitted parties to enter into protective orders that permit the limited disclosure of a plaintiff's identity for discovery purposes on the condition that the defendants do not disclose it to the general public."  *Plaintiffs #1-21*, 138 F.Supp. 3d at 277; *Doe v. U.S.*, No. 16-cv-7256 (JGK), 2017 WL 2389701, at *1 (S.D.N.Y. June 1, 2017).

Anonymity in this case, would be limited to the pseudonyms that the Plaintiffs use, not to who each Plaintiff is in every other respect.  *James v. Jacobson*, 6 F.3d 233, 243 (4th Cir. 1993). As previously mentioned, Plaintiffs are willing to provide their full names to Defendants, subject to a protective order that prohibits disclosure to any third-parties.  Plaintiffs also seek redaction of their personally identifying information from the public docket and assurances that Defendants will not use or publish, Plaintiffs' identities pursuant to the protective order.  With this concession in place, Defendants will not be prejudiced if Plaintiffs' motion is granted and, therefore, this factor weighs in favor of allowing Plaintiffs to proceed under pseudonyms.

### G. Factor 7: The John Doe Plaintiffs have kept their identity confidential to date.

Whether Plaintiffs have kept their identity confidential to date is a factor for the Court to consider. *Sealed Plaintiff*, 537 F.3d at 190. Here, Plaintiffs have maintained their anonymity to date, and have not disclosed their identities in any public forum. Consequently, this factor weighs in favor of allowing Plaintiffs to proceed under pseudonyms.

### H. Factors 8 & 9: The public interest in the litigation is furthered by allowing Plaintiffs to proceed anonymously; the public interest in knowing the victims' identities is atypically weak.

"The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical." *Stegall*, 653 F. 2d 180 at 185. "The public right to scrutinize governmental functioning, is not so completely impaired by a grant of anonymity to a party as it is by closure of the trial itself, as the assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name." *Richmond Newspapers, Inc.*, 448 U.S. at 599-600.

The public interest is not harmed by allowing Plaintiffs to proceed anonymously, and the public interest itself in knowing the identities of Plaintiffs is an atypically weak one. While the presumptive openness of proceedings is a cornerstone of the American legal system, there is a greater interest in affording victimized plaintiffs, such as John Does Nos. 1 and 2, their day in court without the defendants deterring them from pursuing their claims by forcing the plaintiffs' public identification. The enforcement of federal sex trafficking laws benefits the public, while the identification of Plaintiffs does little, if anything, to further public welfare. *Blue Cross & Blue Shield United of Wisconsin,* 112 F.3d. at 872; *Advanced Textile Corp.,* 214 F.3d at 1072-73.

The public has an interest to see cases tried on their merits. *Advanced Textile Corp.,* 214 F.3d at 1073. In *Advanced Textile Corp.,* the plaintiffs filed claims as a class action under the Fair

Labor Standards Act, based on conditions in a garment factory. The plaintiffs proceeded using pseudonyms due to the fear of severe retaliation by the Chinese government, including physical violence, deportation to China, arrest, and imprisonment. In determining whether the plaintiffs should have been allowed to proceed under pseudonyms, the Ninth Circuit evaluated several factors, including whether granting the request was in the public interest. *Id.* "[A]s the Supreme Court has recognized, fear of . . . reprisals will frequently chill [a person's] willingness to challenge . . . violations of their rights." *Id., citing Mitchell v. De Mario Jewelry, Inc.*, 361 U.S. 288, 292 (1960). Measures that may have a chilling effect on a party's willingness to litigate "violations of statutes are generally considered against public policy." *Id*. In such cases, permitting the plaintiffs to use pseudonyms "will serve the public's interest in this lawsuit by enabling it to go forward." *Id.*

Similarly, as discussed above, Plaintiffs are afraid to come forward out of fear of severe retaliation and public shaming. Nygard is known to pay people to to discredits his victims in the media. Consequently, requiring Plaintiffs to proceed with the litigation as publicly named parties will have a chilling effect for others. Compelling the identification of Plaintiffs will also deter all sex trafficking litigation. Denying victims of sex trafficking anonymity in the appropriate circumstances—such as here—will only further allow Defendants and other sex traffickers to continue without detection or interference by the law. It is in society's best interest to allow Plaintiffs to proceed anonymously. Accordingly, this factor weighs in favor of granting Plaintiffs' motion.

> **I. Factor 10: There are no alternative mechanisms for protecting the identities of Plaintiffs.**

Nygard and his sex trafficking venture has already been in the forefront of the media and will continue to garner considerable attention. The moment Plaintiffs' identities are known, they will be published worldwide and will be the subject of intense media scrutiny. There is no alternative mechanisms for protecting the identities of Plaintiffs, which weighs in favor of granting Plaintiffs' motion.

### III. CONCLUSION

After analyzing the ten *Sealed Plaintiff* factors, the balancing test clearly demonstrates that Plaintiffs' need for anonymity outweighs the countervailing public interest of disclosure. Further, there is little to no prejudice to Defendants.

For the foregoing reasons, the Court should grant Plaintiffs' motion to proceed in this litigation under the pseudonyms of John Does Nos. 1-2. The Court should further order that all materials filed in this action, all judgments, and any other documents relating to this action shall refer to Plaintiffs as John Does with the appropriate numerical value, without additional identifying information. Plaintiffs further request that this Court order that any release or deliberate disclosure of Plaintiffs' identities by Defendants, to anyone outside of their legal representatives or agents, be sanctionable and accountable to the fullest extent of the law.

Dated: August 17, 2020               Respectfully Submitted,

                                     By: /s/ Greg G. Gutzler
                                     Greg G. Gutzler
                                     DICELLO LEVITT GUTZLER LLC
                                     444 Madison Avenue, Fourth Floor
                                     New York, New York  10022
                                     Tel.: 646-933-1000
                                     ggutzler@dicellolevitt.com

>Adam J. Levitt
>Amy E. Keller*
>DICELLO LEVITT GUTZLER LLC
>Ten North Dearborn Street, Eleventh Floor
>Chicago, Illinois  60602
>Tel.:  312-214-7900
>alevitt@dicellolevitt.com
>akeller@dicellolevitt.com
>
>Mark A. DiCello
>Robert F. DiCello*
>Justin J. Hawal*
>DICELLO LEVITT GUTZLER LLC
>7556 Mentor Avenue
>Mentor, Ohio  44060
>Tel.:  440-953-8888
>mad@dicellolevitt.com
>rfdicello@dicellolevitt.com
>jhawal@dicellolevitt.com
>
>*Counsel for Plaintiffs*

*Pro Hac Vice* application to be filed